## UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF MINNESOTA

---

Samuel Kowouto, on behalf of himself
and all others similarly situated,

               Plaintiff,

v.

Jellum Law, P.A.,

               Defendant.

Civil Action No. 22-cv-2655-WMW-LIB

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS**

---

### <u>Introduction</u>

Plaintiff failed to pay his rent. As a result, plaintiff's landlord retained Jellum Law, P.A. ("<u>Jellum</u>") to evict plaintiff. Plaintiff responded by retaining attorney Ryan D. Peterson to represent him in the pending eviction action. The eviction action was then settled without plaintiff being evicted.

In the instant case, plaintiff (still represented by attorney Peterson) now attempts to assert a claim against Jellum using the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "<u>FDCPA</u>"). Plaintiff theorizes that Jellum failed to comply with the FDCPA based on a request for attorneys' fees in the eviction action complaint.

Plaintiff's claim fails as a matter of law for two reasons:

1.     The FDCPA does not apply to eviction cases,[1] which are brought to enforce a <u>possessory interest</u> in property. *See Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct. 1029 (2019).

---

[1] Save for a single section—§ 1692f(6)—which is not at issue in this case.

2.      Further, plaintiff was represented in the underlying eviction action with his attorney acting as an "intermediary" on behalf of the current plaintiff. A "competent attorney," would not be deceived, misled, or otherwise adversely impacted by the eviction complaint request for relief, much less in a material way. *See Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567 (8th Cir. 2015). Indeed, the housing court record confirms plaintiff's counsel was <u>not</u> deceived, misled, or otherwise adversely impacted.

Accordingly, Jellum respectfully requests the Court dismiss plaintiff's complaint in its entirety and with prejudice.

## <u>Relevant Background</u>[2]

### I.      Plaintiff's Counsel, Attorney Peterson, Holds Himself Out as an "Expert" in Consumer Rights Issues and Routinely Litigates Such Issues

Based on his own description, attorney Peterson "is a former debt collection attorney turned consumer rights expert and advocate."[3]  Over a decade ago attorney Peterson "joined a Minneapolis-based debt collection firm. There, he quickly learned the nuances of rights and regulations regarding consumers."[4]

Having now shifted his focus to <u>consumer</u> defense and representation, attorney Peterson prominently and emphatically displays his practice philosophy on his website:

"**YOUR FIRST LINE OF DEFENSE**."[5]

---

[2] Jellum does not challenge the factual and legal averments of plaintiff's complaint solely for purposes of this motion. Jellum expressly reserves the right to challenge those averments at later stages of this litigation, if necessary.

[3] *See* https://petersonlegalpllc.business.site/?utm_source=gmb&utm_medium=referral#summary (last accessed October 20, 2022).

[4] *Id*.

[5] *Id*.

Attorney Peterson fully understands and appreciates his role as the "intermediary" between his consumer clients and the creditors suing them (as well as the creditors' lawyers)—and markets himself to the public as such.

One tactic of attorney Peterson's "first line of defense" strategy is to "go on the offensive." A PACER Case Locator search for attorney "Ryan D. Peterson" confirms that attorney Peterson has prosecuted over 100 so-called consumer-protection lawsuits in this Court since 2014. [Newman Dec. ¶ 2.]

## II.    Plaintiff's Landlord Retains Jellum to Evict Plaintiff

Plaintiff entered into a residential property lease with IH3 Property Minnesota L.P. on September 8, 2021. [Pl. Compl. ¶ 19.] Plaintiff failed to pay the money due under the lease. [*Id.* ¶¶ 21-22.] Accordingly, plaintiff's landlord retained Jellum to evict plaintiff. [*Id.* ¶ 23.]

On April 25, 2022, Jellum filed an unlawful detainer action on behalf of the landlord and against plaintiff in the housing court for Hennepin County, Minnesota, styled *IH3 Property Minnesota, L.P., a Delaware limited partnership, d/b/a Invitation Homes v. Samuel Kowouto et al.* and assigned court file number 27-CV-HC-22-1668 (the "Eviction Action").[6] [Compl. ¶ 24.]

---

[6] It is appropriate for the Court to take judicial notice of the docket and filings in the Eviction Action. *See* Fed. R. Evid. 201; *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (citing *U.S. v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999) ("we may take judicial notice of judicial opinions and public records").

### III.     Attorney Peterson Represents Plaintiff and Settles the Eviction Action on Behalf of Plaintiff (thereby Avoiding Eviction and Avoiding Plaintiff Paying Any Attorneys' Fees to the Landlord)

Attorney Peterson appeared for plaintiff at the eviction hearing. [Newman Dec. Ex. A.] Attorney Peterson negotiated a settlement with the landlord (through Jellum) that avoided the housing court issuing a writ of possession. [*Id.*; Compl. ¶ 31.] The settlement agreement was filed on the docket memorializing the terms. [Newman Dec. Ex. B.] The settlement agreement terms did <u>not</u> require plaintiff to pay his landlord any attorneys' fees. [*Id.*]

### IV.     Attorney Peterson (and His Now Co-Counsel) Go on the Offensive

After settling the Eviction Action on terms very favorable to plaintiff (including avoiding paying any attorneys' fees), attorney Peterson wasn't done. He decided to commence a separate lawsuit against Jellum by pocket service. [Doc. No. 1.] Jellum removed the case filed in state court to this Court on October 21, 2022. [*Id.*]

Plaintiff—notwithstanding being silent on it in the underlying settlement—now asserts that Jellum supposedly failed to comply with the FDCPA based on the final averment contained in the Eviction Action complaint:

> 15.     Landlord, pursuant to the terms of the Lease, is also entitled to payment of all attorneys' fees incurred by Landlord.

[Compl. ¶ 15.]

Specifically, plaintiff alleges Jellum should not have prayed for "all" attorneys' fees because plaintiff's lease capped attorneys' fees at $500. [Compl. ¶¶ 26-27, 37-38.]

## <u>Legal Standards</u>

**I.     Motion to Dismiss for Failure to State a Claim**

Rule 8 requires a plaintiff to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint—nothing more, nothing less. *See, e.g., Morrison v. Moneygram Interns., Inc.*, 607 F. Supp.2d 1033, 1055 (D. Minn. 2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Put simply, the complaint must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 67. Although the allegations in the complaint must be taken as true, a court should not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594-95 (8th Cir. 2009).

On a motion to dismiss, the district court may consider materials that are "necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

Documents "necessarily embraced by the pleadings" include "materials that are part of the public record or do not contradict the complaint."  *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999); *see also Shqeirat v. U.S. Airways Group, Inc*., 515 F. Supp. 2d 984, 991-92 (D. Minn. 2007).

## II.   The Elements Required to State a Viable FDCPA Exclude the Eviction Action

The FDCPA only applies to "debt collectors" who attempt to collect "debts." 15 U.S.C. § 1692a(5)-(6); *Klein v. Stewart Zlimen & Jungers, Ltd.*, No. 18-cv-710, 2019 WL 79317, at *2-3 (D. Minn. Jan. 2, 2019).

The Supreme Court recently held that attorneys attempting to enforce *in rem* security interests are only subject to a single section of the Act—§ 1692f(6). *Obduskey*, 139 S.Ct. 1029. As set out below in more detail, Jellum performed an equivalent function in the Eviction Action, a proceeding akin to the nonjudicial foreclosure performed in *Obduskey*—i.e., an action to secure possession of the subject property through a summary proceeding.

The *Obduskey* Court held that such efforts to secure possessory rights to real property fall outside of the FDCPA, with one exception. That is, only § 1692f(6) of the FDCPA was held to apply to *in rem* proceedings, like the eviction action of the type Jellum pursued. Plaintiff here makes no attempt to assert a claim under § 1692f(6), which alone dooms his claim.

**III.    The FDCPA "Competent Attorney" Standard Also Dooms Plaintiff's Case**

The Supreme Court explained that "to determine whether a statement is misleading normally requires consideration of the legal sophistication of its audience." *Midland Funding, LLC v. Johnson*, 137 S.Ct. 1407, 1413 (2017) (quotation marks and citation omitted).

Courts apply the "unsophisticated consumer standard" to "FDCPA claims challenging debt collection letters and other communications <u>directly to the consumer</u>." *Powers v. Credit Mgmt. Servs, Inc.*, 776 F.3d 567, 574 (8th Cir. 2015) (emphasis added); *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002) (internal quotations and citations omitted, noting the test is "designed to protect consumers of below average sophistication or intelligence, but … also contain[s] an 'objective element of reasonableness … that prevents liability for bizarre or idiosyncratic interpretations of collection notices.").

But this standard is inapplicable where the consumer is represented by counsel, as plaintiff here was in the underlying Eviction Action. Instead, "**where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the <u>attorney</u>, rather than the FDCPA, will protect the consumer from a debt collector's [allegedly] fraudulent or harassing behavior.**" *Powers*, 776 F.3d at 574 (emphasis added and quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002)).

In such circumstances, the "competent attorney standard" applies, not the "unsophisticated consumer standard." *Id*. Therefore, "'a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in

consumer debt law, should not be actionable.'" *Powers* at 574 (quoting *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 775 (7th Cir. 2007)). And here, attorney Peterson is a self-proclaimed "expert" in consumer debt law.

## Argument

The FDCPA does not apply to law firms acting to enforce a creditor's interest in an *in rem* proceeding—e.g., Jellum's representation of the landlord in the Eviction Action. Plaintiff's claim fails on this basis alone.

Even if the FDCPA did apply in its entirety, the Eighth Circuit instructs that while "[t]he FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every [alleged] violation of a state debt collection law into a federal violation." *Carlson v. First Revenue Assur.*, 359 F.3d 1015, 1018 (8th Cir. 2004).

In short, state court rules governing litigation do not exist as conduits for FDCPA claims to then be litigated in separate lawsuits. And this makes sense, especially where (1) the challenged conduct is a request for relief made in a filed pleading and (2) the consumer is represented by counsel in the underlying lawsuit.

Under this set of circumstances, both applicable here, the FDCPA presumes that the competent lawyer will fulfill their role and thereby protect the defendant-consumer's interests in the litigation process.

In the Eviction Action, attorney Peterson served as a "competent lawyer" (indeed, a self-proclaimed "expert"). And it was attorney Peterson who orchestrated the settlement of the landlord's eviction claim, thereby avoiding plaintiff being evicted. Notably, the

settlement agreement included no provision obligating the plaintiff here (Peterson's defendant-client in the Eviction Action) to pay <u>any</u> attorneys' fees to plaintiff's landlord (nor did the housing court enter an award of fees).

Simply put, the FDCPA presumption in cases where the consumer is represented by counsel came to fruition in the underlying Eviction Action. Attorney Peterson worked out a settlement favorable to his client. Dismissal of plaintiff's current complaint with prejudice is appropriate based on this additional defense.

## I.     Eviction Proceedings Resolve <u>Possession</u> of Real Property

Minnesota courts have long recognized the dual nature of a lease transaction.

- First, as a transaction with the characteristics of a sale or transfer of an interest in land.

- Secondly, as a contract with payment terms.

*See Craig v. Summers*, 49 N.W. 742, 743 (Minn. 1891) (a lease is a conveyance); *State v. Bowman*, 279 N.W. 214, 215 (Minn. 1938) ("A lease is a conveyance of lands or tenements, for a term less than the party conveying has in the premises, in consideration of rent or other recompense."); *Gruman v. Investors Diversified Servs., Inc.*, 78 N.W.2d 377, 380 (Minn. 1956) (a lease is a conveyance in real property).

A section 504B.291 eviction action is a <u>summary proceeding</u> that adjudicates "the limited question of **present possessory rights to the property**." (*Deutsche Bank Nat'l Tr. Co. v. Hanson*, 841 N.W.2d 161, 164 (Minn. Ct. App. 2014) (emphasis added and citation omitted)):

- "It is a long-standing rule that an unlawful detainer action provides a summary proceeding to quickly determine present possessory rights." *Eagan East Ltd. P'Ship v. Powers Investigations, Inc.*, 554 N.W.2d 621, 622 (Minn. Ct. App. 1996) (internal citations omitted); *see also University Community Properties, Inc. v. Norton*, 246 N.W.2d 858, 860 (Minn. 1976).

- "An unlawful detainer action merely determines the right to present possession and does not adjudicate the ultimate legal or equitable rights of ownership possessed by the parties." *Dahlberg v. Young*, 42 N.W.2d 570, 576 (Minn. 1950).

A landlord <u>cannot</u> collect unpaid rent through an eviction action. Instead, a landlord desiring to recoup unpaid rent must bring a <u>separate action</u> to obtain a money judgment against a tenant:

> Our own cases lay down the rule that a statutory action to recover leased premises because of nonpayment of rent is a summary proceeding, involving only the present right to the possession of the premises. Where the plaintiff shows defendant in possession under a lease, and failure to pay the stipulated rent, his cause of action is complete.

*Leifman v. Percansky*, 243 N.W. 446, 447-48 (Minn. 1932) (emphasis added).

The Minnesota Attorney General's Office, in its handbook "Landlords and Tenants: Rights and Responsibilities," explicitly advises that "[a] landlord may not obtain a judgment for unpaid rent in an Eviction Action. To obtain a judgment for unpaid rent, a landlord must bring a separate action in conciliation court or district court." https://www.ag.state.mn.us/consumer/handbooks/lt/CH4.asp (last accessed October 20, 2022, at p. 23).

In sum, an eviction action serves to determine who is entitled to possession of property. An eviction action is not a proceeding to collect rent or money from the tenant.

**II.     The FDCPA Sections Relied on by Plaintiff in the Complaint Are Inapplicable to the Underlying Eviction Action**

The United States Supreme Court has held that only one provision of the FDCPA—§ 1692f(6)—is applicable to entities enforcing security interests, such as law firms engaged in nonjudicial mortgage foreclosures. *Obduskey*, 139 S. Ct. at 1036. The *Obduskey* Court specifically held the remainder of the FDCPA, including the sections plaintiff relies on here, are inapplicable to Jellum's pursuit of its landlord-client's possessory-right remedy. *Id*. at 1038.

A review of the *Obduskey* case is instructive. There, the consumer had purchased a home with a loan secured by a mortgage. 139 S. Ct. at 1034. The consumer defaulted, and the bank hired a law firm to conduct a nonjudicial foreclosure. *Id*. at 1035. The law firm sent the consumer a letter informing him of the foreclosure, including the loan's outstanding balance as well as the identity of the creditor bank. *Id*.

The consumer responded with a letter attempting to invoke section 1692g(b) of the FDCPA, a section which provides that if a consumer timely disputes the amount of a debt or the debt itself, a "debt collector" must "cease collection" until it "obtains verification of the debt" and mails a copy to the debtor." *Id*.

The law firm in *Obduskey* did not cease collection, nor did it provide the requested verification. *Id*.

"Instead, the firm initiated a nonjudicial foreclosure action by filing a notice of election and demand with the county public trustee." *Id*. The consumer in turn responded by filing a FDCPA action alleging the law firm failed to comply with section 1692g. *Id*.

The District of Colorado dismissed the suit because the law firm was not a "debt collector," and therefore, section 1692g did not apply to it. *Id.* (citing *Obduskey v. Wells Fargo*, No. 15-cv-01734-RBJ, 2016 WL 4091174, *3 (D. Colo. July 19, 2016)).

The Tenth Circuit affirmed. See *Obduskey v. Wells Fargo*, 879 F.3d 1216, 1223 (10th Cir. 2018) (holding that "mere act of enforcing a security interest through a non-judicial foreclosure proceeding does <u>not</u> fall under" the FDCPA) (emphasis added).

The Supreme Court accepted the consumer's appeal and likewise <u>affirmed</u>. It held that only § 1692f(6) of the FDCPA applied to the foreclosure law firm—for three reasons. 139 S. Ct. 1029 at 1038.

<u>First</u>, cannons of statutory interpretation required this holding. If the reference to "the enforcement of security interests" and the applicability of § 1692f(6) to such security-interest enforcers in the § 1692a(6) definition of "debt collector" were not read to exclude such security-interest enforcers from all FDCPA provision except § 1692f(6), then this specific reference would be superfluous. *Id.* at 1036-37 (citing *Arlington Central School Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 299, n.1 (2006)).

<u>Second</u>, the *Obduskey* Court held that Congress "may well have chosen to treat security-interest enforcement differently from ordinary debt collection in order to avoid conflicts with state nonjudicial foreclosures schemes." *Id.* at 1037

<u>Third</u>, the legislative history of the FDCPA indicated that Congress "considered a version [of the Act] that would have subjected security-interest enforcers to the full coverage of the Act," as well as a version that "would have totally excluded [security interest enforcers] from the Act's coverage …." *Id.* at 1037-38 (citing S. 918, 95th Cong.,

12

1st Sess., § 803(f) (1977)). And then enacted the FDCPA without the full application of the Act to security-interest enforcers.

The *Obduskey* Court therefore held that the final version of the FDCPA was a compromise—"[t]he prohibitions contained in § 1692f(6) will cover security-interest enforcers, while the other 'debt collector' provision of the Act will not." *Id.* at 1038.

In the instant case, plaintiff's landlord engaged Jellum (also a law firm) to conduct an *in rem* proceeding solely to determine the present possessory interest of the subject apartment. Just as the law firm was in *Obduskey*, Jellum too is excluded from the FDCPA's "debt collector" definition[7] for the same reasons the Supreme Court held that a law firm engaged in a nonjudicial mortgage foreclosure was excluded from the definition.

All of the FDCPA sections plaintiff asserts in the instant case are wholly inapplicable to the Eviction Action proceeding below. Because plaintiff has not alleged a claim under section 1692f(6) of the FDCPA (the only section of the Act that applies in the context of the underlying Eviction Action), plaintiff's claim is not viable. As a result, plaintiff's attempted FDCPA claim fails as a matter of law.

---

[7] With the exception of section 1692f(6)).

III.    **Put Differently, Jellum Was Not Attempting to Collect a "Debt" in the Eviction Action**

Even apart from *Obduskey*, plaintiff's attempted FDCPA claim also fails because Jellum was not attempting to collect a "debt" during the Eviction Action.

Jellum's landlord client was not entitled to a money judgment for unpaid rent from the housing court. All that can be recovered in an eviction action is a determination from the housing court that the landlord is entitled to possession of plaintiffs' apartment.

This reality makes *Obduskey* even more instructive and favorable to Jellum. As the Supreme Court explained:

> [A] home loan is an obligation to pay money, and the purpose of a mortgage is to secure that obligation. Foreclosure, in turn, is "the process in which property securing a mortgage is sold to pay off the loan balance due." 2 Dunaway § 15:1. In other words, foreclosure is a means of collecting a debt. And a business pursuing nonjudicial foreclosures would, under the capacious language of the Act's primary definition, be one that "regularly collects or attempts to collect, directly or indirectly, debts." § 1692a(6).
>
> It is true that, as McCarthy points out, nonjudicial foreclosure does not seek "a payment of money from the debtor" but rather from sale of the property itself. Brief for Respondent 17 (emphasis added). But nothing in the primary definition requires that payment on a debt come "from a debtor." The statute speaks simply of the "collection of any debts ... owed or due." § 1692a(6). Moreover, the provision sweeps in both "direc[t]" and "indirec[t]" debt collection. Ibid. So, even if nonjudicial foreclosure were not a direct attempt to collect a debt, because it aims to collect on a consumer's obligation by way of enforcing a security interest, it would be an indirect attempt to collect a debt.

139 S. Ct. at 1036-37 (some internal citations omitted).

Here, (unlike the mortgage foreclosure proceeding in *Obduskey* where the creditor bank <u>would</u> receive payment—albeit indirectly—of the debt through the foreclosure sale

of the homeowner's house), the Eviction Action could not, by statute, result in a money

judgment for unpaid rent. Thus, it could not constitute "debt" collection.

Other courts have come to the same conclusion under similar circumstances:

- There was no attempt to collect a "debt" in post-foreclosure eviction proceedings where defendant "only sought possession of [the consumer's] home." *Todaro v. Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A.*, 704 Fed. App'x 440, 441 (6th Cir. 2017).

- "Defendant's role was to send the notice to vacate and commence eviction proceedings. Defendant was not seeking a deficiency judgment or the payment of money; rather, Defendant demanded that Plaintiff vacate the premises. Under these circumstances, Defendant was not attempting to collect a debt." *Bobo v. Trott & Trott, P.C.*, No. 13-cv-14696, 2014 WL 555201, at *2 (E.D. Mich. Feb. 12, 2014) (internal citations omitted)

- "[T]he … summary eviction action did not constitute debt collection … U.S. Bank's summary eviction complaint confirms that it sought possession rather than monetary damages. Because U.S. Bank was not seeking to collect a debt when it initiated the summary eviction proceedings against Bond, its actions could not violate the FDCPA." *Bond v. U.S. Bank, N.A.*, No. 09-cv-14541, 2010 WL 1265852, at *5 (E.D. Mich. Mar. 29, 2010).

Based on the foregoing, Jellum was <u>not</u> engaged in debt collection while pursuing

the Eviction Action. Accordingly, plaintiff's attempted claim fails as a matter of law for

this additional reason.

**IV.     Attorney Peterson Served the Role the FDCPA Presumes He Would, Which Further Dooms Plaintiff's Claim**

Even if the FDCPA applied to an eviction proceeding, plaintiff's claim would still fail because attorney Peterson acted as an effective and insulating intermediary between plaintiff and Jellum in the Eviction Action.

Indeed, a competent attorney need not even be a "specialist in consumer law" to understand that:

- Under the "American Rule" each party to litigation bears its own attorneys' fees;

- That rule is subject to modification by contract;

- Plaintiff's lease, which was filed on the docket in the Eviction Action along with the complaint (and thus immediately available to attorney Peterson), contains such a modification;

- An attorneys' fees provision might not allow for complete recovery of all fees incurred by the contract party;

- The attorneys' fees provision in the lease capped fees at $500.

The required analysis of the subject contractual lease regarding a party's entitlement to recover its fees from the other party (an exception to the "standard" rule) is Contracts Law 101. This rudimentary analysis controlled the ultimate outcome of the Eviction Action (had it gone to a final result rather than being settled).

The events of the Eviction Action confirm that attorney Peterson—again, a self-described "expert" in the defense of consumer actions—understood each of these points and used them to negotiate a favorable resolution of the Eviction Action for plaintiff. A resolution negotiated by attorney Peterson that **did not require plaintiff to pay <u>any</u> attorneys' fees to his landlord**. [Newman Dec. Ex. B.]

16

Attorney Peterson did indeed act as an effective intermediary between Jellum (which brought the Eviction Action on behalf of its landlord client) and plaintiff. Attorney Peterson received, analyzed, and responded to the Eviction Action complaint, which included the lease, and negotiated a settlement—just as attorney Peterson promised he would do ("**YOUR FIRST LINE OF DEFENSE**") and just as the FDCPA requires. *Powers*, 776 F.3d at 574 (quoting *Kropelnicki*, 290 F.3d at 128).

Attorney Peterson, acting as intermediary, was not misled or deceived in the Eviction Action. Accordingly, plaintiff's complaint in the instant action also fails to state a cognizable claim for this additional reason and dismissal is warranted on this basis as well.

## IV.   The Request for Fees Was Not Material in Any Event

An alleged "misleading" or "false" statement in the collection process is not actionable under the FDCPA unless it is "material."

Otherwise stated, "'[i]f a statement would not mislead the unsophisticated consumer [here, the 'competent lawyer'], it does not violate the [FDCPA]—even if it is false in some technical sense.' A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) (quoting *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009)); *see also Hill v. Accounts Receivable Servs., Inc.*, 888 F.3d 343, 345-46 (8th Cir. 2018) (adopting materiality standard); *Peters v. General Serv. Bureau, Inc.*, 277 F.3d 1051, 1056 (8th Cir. 2002).

A statement is material if it would impact the competent attorneys' ability to "choose intelligently" their response to the statement. *Hahn*, 557 F.3d at 757-58.

Here, even if the request for fees in the Eviction Action complaint were somehow "false" or "misleading" (which is denied), it was immaterial because attorney Peterson was not misled by it, has not alleged he was misled by it, and all of this was confirmed by his response to the fee request—i.e., by settling the Eviction Action without plaintiff being evicted or paying any attorneys' fees.

### Conclusion

Jellum's representation of the landlord in the Eviction Action was not subject to the FDCPA. For this reason alone this case should be dismissed.

Even if the FDCPA applied, the Eviction Action unfolded in the way the FDCPA envisions it should when an attorney makes a request for relief in a pleading where the defendant-consumer is represented by counsel:

- plaintiff utilized an attorney to respond to the complaint;

- that attorney examined the complaint and the lease regarding attorneys' fees;

- that counsel then responded to the Eviction Complaint and its request for fees, as well as the lease's cap on fees, with a negotiated settlement of the Eviction Action, which did not include any attorneys' fees.

Attorney Peterson was not misled or deceived, much less in a material way, and the underlying matter was resolved on a favorable basis to the now plaintiff.

Accordingly, Jellum respectfully requests the Court dismiss plaintiff's complaint in this matter in its entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

**BASSFORD REMELE**
*A Professional Association*

Dated: October 28, 2022          By:  */s/ Patrick D. Newman*
                                     Michael A. Klutho (MN #186302)
                                     Patrick D. Newman (MN#395864)
                                     100 South Fifth Street, Suite 1500
                                     Minneapolis, MN  55402
                                     Telephone: (612) 333-3000
                                     Facsimile: (612) 333-8829
                                     Email: mklutho@bassford.com
                                            pnewman@bassford.com

                                     *Attorneys for Jellum Law, P.A.*