## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Samuel Kowouto, on behalf of himself
and all others similarly situated,

Plaintiff,

vs.

Jellum Law, P.A.,
Defendant.

Case No. 0:22-cv-2655-WMW/LIB

**MEMORANDUM OF LAW IN
OPPOSITION TO MOTION TO
DISMISS**

_____

### INTRODUCTION

In the course or trying to kick people of out their homes, Defendant Jellum Law,

P.A. ("Jellum") also threatened those same people with the prospect of a money

judgment for an untold amount in attorneys' fees. In other words, not only would the

threatened consumers incur the injury of not having a place to live, they would be subject

to the insult of paying their former landlord's lawyers' bills.  Plaintiff asserts that the

manner in which Defendant's threats of imposing attorney fees violated the letter and

spirit of the Fair Debt Collection Practices Act – 15 U.S.C §1692 et, seq.

Defendant has brought the instant motion to dismiss in order to avoid

responsibility for its behavior. In so doing, it has grossly conflated and attempted to

shoehorn inapplicable precedent into the facts of the present dispute. Furthermore, it has

1

omitted from those facts information that is material and that, ultimately, defeats one of its key arguments.

In actuality, *Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct. 1029 (2019) simply doesn't apply to the facts of this case because it doesn't concern the enforcement of a possessory interest. Instead, the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. §1692, *et seq.*, applies because not only is an eviction for non-payment of rent collection activity, but Defendant demanded the payment of its attorneys' for bringing the action.

Furthermore, while it's true that 8th Circuit precedent limits the circumstances in which the FDPCA can attach in scenarios in which the consumer is represented by counsel, Defendant's argument on that point ignores the facts pled in the Complaint as well as the underlying state court eviction records. The deceptive communication that is complained of, that Plaintiff would be liable for *all* of Defendants' fees, was not directed to counsel, but instead, was served upon and received by Plaintiff, himself.

It is for these reasons that Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss.

## FACTS

In 2017, Plaintiff moved into a single-family home in Brooklyn Park (the "Premises"). [Plaintiff's Complaint ("Doc. 1-1") ¶¶ 20-21.] The home was owned and managed by a company named "IH3 Property Minnesota, L.P., a Delaware limited partnership", which conducted business under the name "Invitation Homes." *Id.* ¶¶ 19, 24. Plaintiff and Invitation Homes entered into annual lease agreements for each of the

five years Plaintiff resided at the Premises. *Id.* ¶ 20. As part of those agreements, Invitation Homes agreed to initially pay for the costs of water, sewer, and trash, and Invitation Homes was supposed to subsequently invoice Plaintiff for those amounts. *Id.* ¶ 21.

Unfortunately, Invitation Homes frequently neglected to send those invoices. *Id.* ¶ 22. As a result, a substantial arrearage accumulated on Plaintiff's ledger maintained by Invitation Homes, despite the fact that Plaintiff always paid his base rent. *Id.* ¶ 23.

On or about April 25, 2022, Invitation Homes brought an eviction for non-payment of rent in Hennepin County District Court (the "Eviction Action"). *Id.* ¶23. The Eviction Action was titled *IH3 Property Minnesota, L.P., a Delaware limited partnership, d/b/a/ Invitation Homes v. Samuel Kowouto, et. al.,* Court File No. 27-CV-HC-22-1668. *Id.* ¶ 24. Defendant represented Invitation Homes in the Eviction Action. *Id.* ¶ 23.

In the complaint filed by Defendant in the Eviction Action, it states "Landlord, pursuant to the terms of the Lease, is also entitled to payment of all attorneys' fees incurred by Landlord." *Id.* ¶ 25. However, this assertion by Defendant was not true and therefore was misleading. What the lease actually says is "In any legal action brought by either party to enforce the terms of this Lease, the prevailing party is entitled costs incurred in connection with such action, including reasonable attorneys' fees, expenses, and other costs of collection; provided, however, that *such amount shall not exceed Five Hundred Dollars ($500).*" *Id.* ¶ 26. *(emphasis added)*

On or about May 23, 2022, this misleading complaint was served on Plaintiff Samuel Kuwouto by delivering it to him personally. *Id.* ¶ 29; [Declaration of Ryan D.

3

Peterson ("Peterson Decl.") ¶ 2, Ex. A].  Along with the fear of losing his housing, Mr. Kuwouto was anxious and worried that the Eviction Action would result in his responsibility for thousands of dollars in attorneys' fees. [Doc. 1-1 ¶ 30].

Mr. Kuwouto subsequently retained the undersigned counsel, Mr. Peterson, to represent him in the Eviction Action. [Eviction Action – Findings of Fact, Conclusions of law, Order and Judgment (Minn. Stat. ¶ 504B.345) (Doc. 8-2)]. On June 1, 2022, Attorney Lindsay Cremona from Defendant Jellum represented Invitation Homes at a hearing in the Eviction Action. *Id.* At that hearing, Ms. Cremona and Plaintiff, represented by Mr. Peterson, negotiated a settlement where Invitation Homes waived $2,777.10 of the amount pled in its complaint in exchange for Plaintiff's payment of funds that were allegedly in arrears. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint should be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly*, 550 U.S. at 556).

"While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555. "When ruling on a motion to dismiss, the district court must

accept the allegations contained in the complaint as true and all reasonable inferences

from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St.*

*Charles*, 244 F.3d 623, 627 (8th Cir. 2001). A complaint "…must contain either direct or

inferential allegations respecting all the material elements necessary to sustain recovery

under some viable theory." *Ascon Properties, Inc. v. Mobile Oil Co*., 866 F.2d 1149,

1155 (9th Cir. 1989).

## ARGUMENT

Defendant first argues that Plaintiff's Complaint should be dismissed because the

United States Supreme Court held that in *Obduskey* that actions to enforce possessory

interests in real property are only governed by section 1692f(6) of the FDCPA and,

therefore, the remainder of the act does not apply to Defendant. *Obduskey* said no such

thing. The holding in *Obduskey* was extremely narrow and limited itself to the application

of the FDCPA to *nonjudicial foreclosure of security interests*. The case says nothing

about the enforcement of other types of interests in other contexts. Simply put, it's

inapplicable to the circumstances in this case.

Defendant additionally argues that an eviction for non-payment of rent is not the

collection of a debt, regardless of *Obduskey*, and, therefore, the Complaint should be

dismissed. Once again, this argument ignores the case law pertaining to the subject,

including case law in this very District. Furthermore, the activity complained of in this

case does not relate to the collection of any rent. Defendant's violation pertains

specifically to a misleading claim regarding the amounts of attorneys' fees demanded

within the eviction complaint, not the amount of rent that was allegedly past due. Finally,

the fact that Plaintiff was eventually represented in the Eviction Action is immaterial. The

offending collection communication or pleading was served upon Plaintiff directly and is,

therefore, analyzed under the unsophisticated consumer standard, NOT the competent

attorney standard, as Defendant advocates.

**I.   The FDCPA Applies to Defendant's Demand for all Attorneys' Fees in the Underlying Eviction Action**

**a.   *Obduskey* is inapplicable to evictions for non-payment of rent.**

Defendant's primary argument for dismissal is that the Supreme Court in

*Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct. 1029 (2019) held that only the

FDCPA's limited application section in §1692f(6) applies to law firms that enforce

possessory interests in property. This argument fails for the very simple reason that the

holding in *Obduskey* doesn't actually say that; rather, *Obduskey's* holding is far more

narrow and applies to "no more than the kind of security-interest enforcement at issue

here—nonjudicial foreclosure proceedings." *Id.* at 1033.

*Obduskey* is an extremely fact specific case, so in order to apply the holding, it's

necessary to summarize those facts. In that case, Dennis Obduskey was a consumer who

fell behind on payments on the mortgage securing the property to his home. *Id.* at 1034.

In Colorado, where he lived, lenders are able to enforce mortgages (a type of security

interest) by utilizing a nonjudicial foreclosure procedure. *Id.* Obduskey's lender, Wells

Fargo, hired a law firm named McCarthy & Holthus LLP ("McCarthy") to do just that. *Id.* at 1035.

McCarthy took the steps required by state law and sent Obduskey a notice that it was going to enforce its client's security interest on his home through nonjudicial foreclosure. *Id.* Obduskey responded by asserting rights given to consumers under the FDCPA, including requesting validation of the debt, which then mandates that a debt collector cease collection until it obtains and mails verification of that debt to the consumer. *Id.*

After McCarthy failed to comply, Obduskey sued the law firm in federal court alleging that it violated the FDCPA. *Id.* The District of Colorado dismissed Obduskey's claims on the basis that McCarthy was not a debt collector within the meaning of the Act. *Id.* The Tenth Circuit affirmed the district court's decision. *Id.* The Supreme Court granted Obduskey's petition for *certiorari* in order to resolve what it viewed was a split among the Circuits on the issue. *Id.*

Justice Stephen Breyer wrote the 9-0 opinion for the Court and distilled the issue as follows: is an entity that does no more than conduct nonjudicial foreclosures subject to all of the strictures of the FDCPA? Or is that entity only subject to the provisions of the limited-purpose definition in which persons whose "business the principal purpose of which is the enforcement of security interests" are subject *only* to the provisions in section 1692f(6) of the Act? *Id.* at 1035-36. The Court held that such an entity is subject only to the limited-purpose definition, and for our purposes, it's important to understand how it got there. *Id.*

First, the Court focused on the text of the statute.[1] It held that the existence of a limited-purpose definition indicated an intention to cover entities who wouldn't otherwise fall under the broader, main definition of the act. *Id.* at 1037. In particular, by using the word "also", Congress wasn't simply reiterating that "security-interest enforcers" were covered by the act, but were, instead, in their own category. *Id.* Essentially, this textual analysis found that applying the act as a whole to persons who only enforced security interests would render the limited-purpose definition superfluous.

The second reason for the *Obduskey* Court's holding is the supposition that Congress endeavored to avoid conflicts with state nonjudicial foreclosure laws. *Id.* Justice Breyer opined that state laws regarding non-judicial foreclosure already contained sufficient consumer protections at the time the FDCPA was passed and that applying provisions of the FDCPA to those processes could defeat some of the protections included therein. *Id.*

The third, and final, reason the Court ruled that security interest enforcers were only subject to the limited-purpose definition was that Congress had previously considered a version of the statute that included those who enforced security interests

---

[1] "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. §1692a(6).

within the broader, general definition of debt collector. *Id.* at 1037-38. However, the version of the statute that was eventually passed contained, instead, the limited-purpose definition in which only section 1692f(6) applied. *Id.* at 1038.

A close reading of *Obduskey* shows that it is an *extremely* limited opinion turning on a precise reading of the statutory text in question. As previously stated, the decision concerned "no more than the kind of security-interest enforcement at issue here—nonjudicial foreclosure proceedings." It explicitly declined to consider whether parties who engage in *judicial* foreclosure of mortgages fall within the primary definition of the Act. *Id.* at 1039. Justice Sotomayor in her concurrence observed that the Court "cabin[ed] its holding to the kinds of good-faith actions presented here…" *Id.* at 1041.

Indeed, courts have explicitly remarked on how narrowly *Obduskey* has been applied. *Hullett v. Plunkett Cooney P.C.*, No. 1:18-cv-1441, 2020 U.S. Dist. LEXIS 81067, at *10 (W.D. Mich. Mar. 16, 2020 ("The handful of district courts to have since considered cases with similar facts have construed *Obduskey* narrowly...); *Lloyd v. Pluese, Becker, Saltzman, LLC*, No. 18-9420 (RMB/AMD), 2019 U.S. Dist. LEXIS 199214, 2019 WL 6113859 at *4 (D.N.J. Nov. 18, 2019) ("…the few courts to have considered Obduskey in the eight months since it was decided have read the decision narrowly…).

Some courts have gone so far as to decline to extend its holding to the enforcement of mortgages for no greater reason than the case before it involved a *judicial* foreclosure. *Riotto v. SN Servicing Corp.*, Civil Action No. 19-cv-13921, 2022 U.S. Dist. LEXIS 77254, 2022 WL 1261532 (D.N.J. Apr. 27, 2022); *Berg v. McCalla Raymer*

*Leibert Pierce, LLC*, No. 19 C 5113, 2019 U.S. Dist. LEXIS 187993, 2019 WL 5592720

(N.D. Ill. Oct. 30, 2019); *Flowers v. Baltax 2017, LLC*, No. JKB-19-0618, 2019 U.S.

Dist. LEXIS 129347, 2019 WL 3501584 (D. Md. Aug. 1, 2019).

This isn't to say that *Obduskey* can't be and hasn't been applied to judicial

foreclosures, or that every case needs to be on all fours for it to be applied. But it does

signal that that the decision shouldn't be overread, and that's exactly what Defendant is

doing. In its memorandum, Defendant repeatedly claims that *Obduskey* stands for the

proposition that entities enforcing *possessory* interests are encompassed within the

limited-purpose definition of the Act and, therefore, only section 1692f(6) applies to their

activities.[2] This not only misrepresents the text of the opinion, but also runs counter to the

limited manner in which the decision was written and applied.

Nowhere in the *Obduskey* opinion  is there any discussion of "possessory"

interests. The only interest discussed is security interests, and the decision concerns *only*

the applicability of the limited-purpose definition to companies that engage in one very

specific type of security interest enforcement: non-judicial foreclosure of mortgages.

---

[2] "The FDCPA does not apply to eviction cases, which are brought to enforce a
possessory interest in property. *See Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct.
1029 (2019)." [Doc.7 p. 1];

"The *Obduskey* Court held that such efforts to secure possessory rights to real property
fall outside of the FDCPA, with one exception." [*Id.* p. 6];

"The *Obduskey* Court specifically held the remainder of the FDCPA, including the
sections plaintiff relies on here, are inapplicable to Jellum's pursuit of its landlord-
client's possessory-right remedy." [*Id.* p. 11].

Defendant may argue that it is reasoning by analogy and that the logical extension of the holding in *Obduskey* means that the limited-purpose definition also encompasses possessory interests beyond security interests. But that's not what Defendant does in its argument. Instead, it engages in a duplicity where it pretends that the Supreme Court ruled on the FDPCA's applicability to the enforcement of possessory interests writ-large when it really did no such thing. This is disingenuous at best.

The reason for this attempted sleight of hand is obvious: if this Court applies the text of the FDCPA in the same manner the Supreme Court did in *Obduskey*, it would have to deny Defendant's motion. The very text of the limited-purpose definition mentions *only* "security" interests. It does *not* apply to the interest that Defendant Jellum was enforcing in the Eviction Action, which was a "reversionary" interest.

In the Eviction Action, Defendant alleged its client was entitled to possession of the Premises because Plaintiff had failed to make payment in compliance with the terms of the lease. "A lease is a conveyance of lands or tenements, for a term less than the party conveying has in the premises, in consideration of rent or other recompense." *State v. Bowman*, 202 Minn. 44, 46 (Minn. 1938). The interest held by the lessor is a "reversionary" interest. *Id.* This is not a security interest.

The bottom line is that, looking at the FDCPA's plain text as well as the holding in *Obduskey*, the limited-purpose definition simply doesn't apply Defendant. The only possessory interest contained in the limited purpose definition is "security" interests; there is no mention of "reversionary" interests. For that same reason, *Obduskey* makes

zero mention of reversionary interests or entities who enforce possessory interests pursuant to a lease.

Likewise, had Congress wanted to include the enforcement of non-security possessory interests in the FDPCA's limited-purpose definition of "debt collector," it certainly could have done so. But it didn't, and neither should this Court.

Defendant's memorandum in support of its motion contains 4,462 words spread out over 19 pages. There isn't a citation to any authority that finds other possessory interests are included in the limited-purpose definition, nor is there a citation to a single case that applies *Obduskey* to non-security possessory interests, including the type of reversionary interest that is the subject of this case. The reason is that it doesn't exist. Defendant is attempting to use *Obduskey* as an escape-hatch to this lawsuit by conflating its facts with those found in that case. Plaintiff respectfully requests the Court prevent Defendant from doing so by denying its motion.

### b.  An eviction for non-payment of rent is an attempt to collect a debt.

Defendant next argues in the alternative that if Obduskey doesn't apply, then the Eviction Action was not an attempt to collect a "debt." It argues that because the Eviction Action could not result in a money judgment for unpaid rent, Jellum's action were not "debt collection." This argument is both reductive and incorrect.

This is not the first time a debt collector has argued that because an eviction can only result in a judgment for the possession of real property that an attorney bringing an eviction for nonpayment cannot be said to engage in collection activity.

In *Romea v. Heiberger & Assocs.,* 163 F.3d 111, 116 (2d Cir. 1998), the Second Circuit Court of Appeals ruled that a statutorily mandated three-day notice as a condition precedent to filing an eviction action constitutes collection activity even when the eviction action merely determines which party is entitled to the possession of the premises.

In a particularly persuasive and compelling opinion, the New Jersey Supreme Court ruled that attorneys who filed eviction actions where the sole remedy available is possession of the property were debt collectors. *Hodges v. Sasil Corp.,* 915 A.2d 1 (N.J., 2007). In its opinion, the court made the point that "often, an implicit, if not overt, goal in [eviction] actions — an objective repeatedly achieved by Feinstein — is the securing of payment of back rent." *Id.* at 11. The court correctly held that filing an eviction for non-payment of rent is an activity whose purpose is to induce payment of rent by a consumer.

Minnesota, like New Jersey, has a system where an eviction judgment grants possession of the premises back to the landlord but does not award a money judgment for the unpaid rent. *See* Minn. Stat. §504B.385 subd. 1(a). However, rather than requiring this Court to deduce the purpose of filing such an action, as the *Hodges* court did, the Minnesota legislature has laid it out in black and white: "A landlord may bring an eviction action for nonpayment of rent irrespective of whether the lease contains a right of reentry clause. Such an eviction action is equivalent to a demand for the rent." Minn. Stat. §504B.291 subd. 1(a).

Though the Eighth Circuit has yet to weigh in on this particular issue, a court in this District has had occasion to do so. In *Worley v. Engel,* No. 17-cv-1105 (PAM/SER), 2017 U.S. Dist. LEXIS 111729, 2017 WL 3037558 (D. Minn. July 18, 2017) an attorney who regularly filed evictions for non-payment of rent moved to dismiss the plaintiff's FDCPA claim on exactly the same basis requested in this case by Defendant Jellum. In that case, the Honorable Paul A. Magnuson cited Minn. Stat. §504B.291, subd. 1(a) and held that "because an eviction action is the equivalent to a demand for rent, an eviction action qualifies as an attempt to collect a debt." *Id.* at *7.

Unlike its arguments regarding *Obduskey*, Defendant does muster some authority to supposedly support its position. But when looking under the hood, the cited cases don't apply to the current set of facts. For example, *Todaro v. Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A.*, 704 Fed. App'x 440 (6th Cir. 2017) is a case involving an eviction after non-judicial foreclosure proceedings. The court in that case ruled that the eviction couldn't be collection of a debt because any debt had been extinguished by the foreclosure; there was no longer a debt to enforce. *Id.* at 443.

Defendant's other two case, *Bobo v. Trott & Trott, P.C.*, No. 13-cv-14696, 2014 WL 555201 (E.D. Mich. Feb. 12, 2014) and *Bond v. U.S. Bank, N.A.*, No. 09-cv-14541, 2010 WL 1265852, at *5 (E.D. Mich. Mar. 29, 2010),  similarly involved former lenders attempting to secure possession of residential property following foreclosures and the expiration of any redemption period. Like *Todaro*, the plaintiff in *Bond* was no longer indebted to the lender/owner/landlord because he had received a bankruptcy discharge. *Id.* at *16.

14

In comparing these cases to Minnesota law, the evictions would be most similar to those brought pursuant to Minn. Stat. §504B.285 subd. 1(a)(1)(ii). This is the provision that grants owners of real property the ability to evict persons holding over following "the expiration of the time for redemption on foreclosure of a mortgage…" *Id.* But that's not the circumstances in the present case nor was it the authority Defendant relied on when bringing the Eviction Action.

There are several bases under Minnesota law in which the owner of real property can seek to recover possession of the Premises that don't implicate a tenant's rental obligations even though the payment of rent was a necessary part of the landlord/tenant relationship.[3] Plaintiff is not arguing that every residential eviction constitutes debt collection or bears a relation to the FDCPA. Rather, Plaintiff's assertion is that an eviction for non-payment of rent is a powerful tool in inducing a delinquent tenant to get current on that obligation. Again, under Minnesota law, an eviction for non-payment of rent "is equivalent to a demand for the rent." Minn. Stat. §504B.291 subd. 1(a). See also *Worley, infra.*

As further proof, it's important not to blind ourselves to what happened practically in the Eviction Action: it wasn't resolved through a decision on the merits where either possession was returned to the landlord or Mr. Kowouto prevailed on his defenses. Instead, the Eviction Action was resolved by Plaintiff agreeing to pay Invitation Homes a

---

[3] In addition to holding over following the expiration of a foreclosure redemption period, those circumstances include where a tenant has materially breached a term of their lease or where a tenant holds over following a termination of the tenancy by notice to quit. *See* Minn. Stat. §§504B.285 subd. 1(a)(2)-(3).

portion of the money it claims it was due. The purpose of the Eviction Action was not to obtain possession; the purpose was to secure repayment of allegedly delinquent amounts while retaining a tenant who would continue to pay rent. Defendant Jellum affected that purpose by filing the Eviction Action, serving the Eviction Action, and engaging in negotiations with Plaintiff that resulted in it securing money for its client.

To claim the Eviction Action was not debt collection activity is the ultimate in placing form above substance. Therefore, the Court should deny Defendant's motion on this basis.

### c. Defendant's Eviction Action complaint contained a demand for money damages making Defendant subject to the FDCPA.

Plaintiff has so far discussed in length how *Obduskey* does not apply to eviction actions and how eviction actions to obtain possession of rental property are attempts to collect a debt when centered around alleged non-payment of rent. However, even if the Court were to disagree with Plaintiff on these particular points and decide Defendant has the better argument, Defendant's motion would still have to be denied. The reason is that, in this particular case, the Eviction Action complaint contained a demand for money damages in the form of attorneys' fees. Furthermore, it was that very monetary demand that was deceptive and misleading thereby giving rise to Defendant's FDCPA violation.

Section 1692a(5) defines a debt as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

16

Based upon that definition, there is little doubt that Plaintiff's alleged obligation to pay attorneys' fees falls within the definition of a "debt." The fees provision emanates from a voluntary transaction entered into by Plaintiff, namely the lease. Additionally, the transaction is certainly for "personal, family, or household purposes" because it related to renting the very home at which Plaintiff resided.

Furthermore, Defendant's inclusion of attorneys' fees in the Eviction Action complaint constitutes collection of that debt. In 1995, the U.S. Supreme Court held that collection litigation is debt collection and that an attorney's conduct in that litigation can render it subject to the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 294, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995). False representations regarding a debt that are contained in a pleading subsequently served on a consumer can violate the act, particularly if they affect his or her decision-making. *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818 (8th Cir. 2012). More specifically misrepresentations about the availability and amount of attorneys' fees for which a consumer may be liable under a contract to which they are a party are actionable when they are included in a state court pleading. *Munoz v. Pipestone Fin., LLC*, 513 F. Supp. 2d 1076, 1083 (D. Minn. 2007).

We should once more look to the Supreme Court for guidance. The text in *Obduskey* confined itself to a very narrow set of facts in which a law firm was sending state-mandated notices in order to move forward a procedure to enforce a security interest that ultimately precluded the possibility of obtaining a deficiency against the possessor of the property. *Obduskey*, itself, explicitly left open the possibility that if actions were

17

taken over and above this limited activity that an entity could find itself falling under the broader, general definition of "debt collector" in section 1692a(6).

And that's exactly where we find ourselves with this case: Defendant Jellum, in its complaint, didn't just demand possession of the Premises; it also demanded and declared that Plaintiff was liable for "all attorneys' fees incurred by Landlord." In other words, Jellum went beyond enforcing a "possessory" interest; it attempted to obtain a money judgment against Plaintiff through the Eviction Action.

Were we left with merely the text of *Obduskey*, it would be evident that the Supreme Court did not and would not find Defendant's Jellum's exposure to be confined to the limited-purpose definition of the FDCPA. Fortunately, this Court is not the first tribunal to apply *Obduskey* to a set of facts in which a law firm (or other entity) sought to recover money from a consumer ancillary to its quest to enforce a creditor's security interest. In the three years since the Supreme Court spoke, multiple district courts have been confronted with this very issue where payment of money is sought in connection with a foreclosure or other type of repossession. In *every single identifiable case*, courts have held that taking such an action places that party in a position where the entire FDCPA applies to their collection activity, not simply the strictures of section 1692f(6).

For example:

- "…when entities engage in more than security interest enforcement by sending consumers letters that demand payment of a debt, then those entities act as debt collectors under FDCPA. "*Hammack v. PHH Mortg. Corp.*, Civil Action No. 3:22-cv-111, 2022 U.S. Dist. LEXIS 115993, at *11 (E.D. Va. June 29, 2022).

- "…the relevant conduct here concerns the Demand for Payment letter, not the filing of the foreclosure action." *Brown v. Wells Fargo Bank, N.A.,* No. C19-

18

3041-LTS, 2020 U.S. Dist. LEXIS 3614, 2020 WL 89694 at *15 (N.D. Iowa Jan. 7, 2020).

- "The fact that Defendants requested payment of fees through Plaintiffs mortgage servicer, which were then assessed on Plaintiff, does not insulate Defendants from liability as debt collectors." *Flowers v. Baltax* 2017, LLC, No. JKB-19-0618, 2019 U.S. Dist. LEXIS 129347, 2019 WL 3501584, at *12 (D. Md. Aug. 1, 2019).

Even were *Obduskey* to apply to eviction actions where a reversionary interest is being enforced, all the available authority demonstrates that the additional action of seeking monetary payment renders Defendant Jellum subject to the entire FDCPA. *See O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 33 (D. Mass. 2014) ("A synthesis of the existing cases that address [evictions] suggests that an eviction action can implicate the FDCPA, particularly where the eviction action includes some demand for payment tied to the property at issue.")

Likewise, Jellum's demand for attorneys' fees destroys Jellum's argument that an eviction is not collection of a debt because it's no more than an attempt to recover possession of real property. Plaintiff obviously disagrees with the argument on its face, but its an argument that's inapplicable to the facts in this case. While it's true that "Jellum's landlord client was not entitled to a money judgment for unpaid rent from the housing court," this was not only relief that Defendant sought. Instead, Jellum was also seeking attorneys' fees pursuant to the lease entered into between Plaintiff and Invitation Homes. That activity is indisputably collection of a debt.  To this end, Defendant's demand for payment of attorneys' fees, by itself, constitutes debt collection activity, and Defendant's Motion to Dismiss should be denied.

## II. Attorney Involvement is Irrelevant to This Case

The other basis upon which Defendant claims this case should be dismissed is because of the involvement of the undersigned counsel, Ryan Peterson. In making this claim, Defendant grossly overstates the applicability of the competent attorney standard.

Plaintiff recognizes and agrees that many courts, including the Eighth Circuit, have adopted a "competent attorney" standard through which communications should be analyzed when those communications are directed to an attorney rather than to the consumer themself. As the case law states "while the unsophisticated consumer standard applies to communications with debtors, a competent attorney standard applies where an attorney is interposed as an intermediary between a debt collector and a consumer." *Demarais v. Gurstel Chargo, P.A.,* 869 F.3d 685, 695 (8th Cir. 2017).

Defendant's argument again elides the facts pled in the Complaint. The Eviction Action complaint, the communication that contained the offending verbiage, was neither directed to nor received by Mr. Peterson. That communication was hand-delivered to Mr. Kowouto personally. There was no attorney intermediary to guard Mr. Kowouto from the fear that he may be (and possibly already was) responsible for an untold amount in attorneys' fees.

The way in which Defendant's assertion is presented makes it seem that if at any time an attorney is involved in the representation of a consumer, no misrepresentations regarding the nature of that debt are actionable. Defendant effectively argues that Mr. Peterson's subsequent involvement cured the misrepresentation contained in the Eviction

Action complaint delivered, personally, to Mr. Kowouto. The notion is an absurdity and flatly ignores the very letter and purpose of the FDCPA.

Though the undersigned appreciates that Defendant Jellum utilized this motion to market his practice, the attorney involvement isn't relevant to Plaintiff's misrepresentation claim. The communication at issue was directed to and receive by Mr. Kowouto and, therefore, it should be viewed through the unsophisticated consumer standard.

One final coda on this issue: the recipient of a communication and the accompanying standard from which to evaluate that communication is only relevant to claims brought under section 1692e of the Act. A careful reading shows that Plaintiff also alleged a violation of section 1692f(1), which states that "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" violates the Act."

While section 1692e guards against misrepresentations, section 1692f, and it's accompanying subsections, prohibits unfair practices. For that reason, the recipient of any communications in the course of collecting that debt is not relevant; it's the unfair practice, itself, that gives rise to the violation. *Demarais*, 869 F.3d at 699. Whether an attorney intermediary exists or not doesn't factor into the §1692f analysis. *Id.* Even were the Court to dismiss Plaintiff's 1692e claims on the basis forwarded by Defendant, the 1692f(1) claim would necessarily remain and  Defendant's Motion to Dismiss should be denied.

21

## CONCLUSION

As Plaintiff has shown, *Obduskey* does not apply to the enforcement of possessory interests beyond security interests. Additionally, an eviction for non-payment of rent is the collection of a debt, particularly when applied to Minnesota Statutes. Even were the Court to concur with Defendant Jellum's arguments on those points, the FDCPA would still apply to the facts in this case because Defendant sought a money judgment for attorneys' fees against Plaintiff. Finally, the misrepresentation in this case was received directly by Plaintiff, and therefore, the competent attorney standard does not apply. For these reasons, Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

Dated: December 2, 2022                Respectfully Submitted,

PETERSON LEGAL, PLLC

s/Ryan D. Peterson
Ryan D. Peterson (#0389607)
6600 France Avenue S
Suite 602
Edina, MN 55435
(612) 367-6568
ryan@peterson.legal

Thomas J. Lyons, Jr., Esq.
Attorney I.D. #:  0249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:  (651) 704-0907
tommy@consumerjusticecenter.com

ATTORNEYS FOR PLAINTIFF