## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Samuel Kowouto, | Case No. 22-cv-2655 (SRN/DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| Jellum Law, P.A., | |
| Defendant. | |

Ryan D. Peterson, Consumer Attorneys, PLC, 6600 France Avenue, Suite 602, Edina, MN 55435, and Thomas J. Lyons, Jr., Consumer Justice Center P.A., 367 Commerce Court, Vadnais Heights, MN 55127, for the Plaintiff.

Kiralyn Locke, Michael A. Klutho, and Patrick D. Newman, Bassford Remele PA, 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402, for the Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion for Summary Judgment [Doc. No. 49] filed by Defendant Jellum Law, P.A. ("Jellum Law"). Based on a review of the files, submissions, and proceedings herein, and for the reasons stated below, the Court denies the Motion.

## I.    BACKGROUND

### A.    Facts

#### 1.    The Lease Agreement

The Plaintiff, Samuel Kowouto, entered into a Renewal Residential Rental Agreement (the "Lease") with his landlord, IH3 Property Minnesota L.P. ("Invitation

Homes"), on September 8, 2021. (Cremona Decl. Ex. 2 [Doc. No. 53] at 5.) The Lease term commenced on October 24, 2021, and expired on October 23, 2022. (*Id*.) The Lease includes an attorneys' fees provision, which provides that:

> In any legal action brought by either party to enforce the terms of this Lease, the prevailing party is entitled [*sic*] costs incurred in connection with such action, including reasonable attorneys' fees, expenses, and other costs of collection; provided, however, that such amount shall not exceed Five Hundred Dollars ($500).

(*Id*. at 22–23 ¶ 47.)

### 2. The Eviction Action Against Mr. Kowouto

On April 25, 2022, Jellum Law filed an unlawful detainer complaint for residential property ("Eviction Complaint") on behalf of Invitation Homes against Mr. Kowouto and his co-tenants in Minnesota state district court. (*Id*. at 1–3.) The matter was captioned *IH3 Property Minnesota, L.P., a Delaware limited partnership, d/b/a Invitation Homes v. Samuel Kowouto et al.*, and assigned the state court file number 27-CV-HC-22-1668. (*Id*.) The Eviction Complaint alleged that Mr. Kowouto and his co-tenants owed Invitation Homes two months of rent, along with late fees, rental insurance premiums, and unpaid utilities. (*Id*. at 2 ¶ 10.) Accordingly, it alleged that the tenants unlawfully retained possession of the property, and demanded their eviction along with the costs of filing and serving the action. (*Id*. at 3 ¶ 14.)

The final paragraph of the Eviction Complaint alleged that "Landlord, pursuant to the terms of the Lease, is also entitled to payment of all attorneys' fees incurred by Landlord." (*Id*. at 3 ¶ 15.)

The language in the Eviction Complaint was apparently drafted using a standard template, that Jellum Law generated to facilitate its filing of eviction proceedings on behalf of Invitation Homes. (Cremona Decl. at 2 ¶ 6; Peterson Decl. Ex. A [Doc. No. 61] at 105:16–106:6; Lenss Decl. [Doc. No. 54] at 2 ¶ 9.) That template was developed some years before, when Invitation Homes included in all of its leases a provision for attorneys' fees that was uncapped. (Peterson Decl. Ex. A at 67:12–19.) In 2019, however, Invitation Homes changed that standard lease provision to limit all fees and costs to $500. (*Id.*)

On May 23, 2022, at approximately 11:00 a.m., the Eviction Complaint was served on Mr. Kowouto. (Cremona Decl. Ex. 3.) He took the document to his friend's house in St. Paul, where they reviewed it together. (Locke Decl. Ex. 3 [Doc. No. 52] at 27:3–14.) After their review, he decided to call an attorney, Mr. Ryan Peterson of Peterson Legal, PLLC, and made an appointment to meet with him. (*Id.* 28:10–23.) The parties have stipulated that Mr. Kowouto first retained Mr. Peterson in the eviction matter on May 23, 2022. (Locke Decl. Ex. 4 at 1 ¶ 1.)

Thereafter, Mr. Peterson, on behalf of Mr. Kowouto, contacted Ms. Lindsay Cremona, one of Jellum Law's attorneys, in an effort to resolve the eviction matter. (*See* Cremona Decl. Ex. 4.) In an email sent on May 31, 2022, Mr. Peterson addressed his concerns about the discrepancy between the Lease and the Eviction Complaint with regard to attorneys' fees:

> My clients are currently considering an offer, but I'm hoping you can clarify something for me as it may help in their deliberations:
>
> In paragraph 15 of your complaint, it states that your client is 'entitled to payment of *all* attorney's fees incurred' (emphasis added). However,

paragraph 47 of the lease seems to cap those fees at $500.00. These seem to be in conflict. Is there something I'm missing?

(*Id*. at 2.) Ms. Cremona responded the same day that "Invitation Homes would assess $500 of legal fees plus costs against the ledger." (*Id*. at 1.) Mr. Peterson then attempted to clarify again: "Okay, but just to be clear: if Plaintiff prevails, my clients will not be responsible for all your client's attorney fees, correct?" (*Id*.) Ms. Cremona responded that "[t]he tenants would be responsible for all legal fees that are to be assessed against the ledger. Per the lease, the ledger would only be charged $500 plus costs." (*Id*.)

The parties were able to settle the eviction matter out-of-court on June 1, 2022. (*See* Cremona Decl. Ex. 5.)

### 3. Jellum Law's Eviction Practice

On April 25, 2022, when the underlying eviction action was filed, Jellum Law employed two attorneys in its litigation practice. (Peterson Decl. Ex. A at 22:10–15.) The litigation group focused on banking law, and typically advertised to clients that "when a loan goes south, we're there to step in and assist with the servicing issues or collection issues that [a]ffect that loan." (*Id*. at 16:16–24.) Specifically, the firm's litigation practice focused on SBA lending, and the majority of these loans were commercial loans. (*Id*. at 17:1–2.) In addition, the litigation team, in 2022, represented clients in eviction work, foreclosures by publication, consumer collection matters, and landlord/tenant matters. (*Id*. at 23:1–22.) Jellum Law also represented its commercial clients in bankruptcy proceedings, including consumer bankruptcy proceedings. (*Id*. at 32:1–24.) Jellum Law trains all new

employees on compliance with the FDCPA, and Ms. Cremona was trained on the FDCPA when she joined the firm. (*Id*. at 92:12–21.)

Jellum Law had been representing landlord clients in residential eviction actions for nonpayment of rent since at least 2012–2013. (*Id*. at 33:3–12.) Invitation Homes was their primary client in residential eviction actions. (*Id*. at 24:6–8.) Jellum Law also represented other large landlord clients for whom it performed eviction actions. (*Id*. at 38:16, 39:5.) Although it has represented clients in commercial eviction matters, the overwhelming majority of eviction actions commenced by Jellum Law in and around 2022 were residential. (*Id*. at 26:4–18.)

In 2022, Ms. Cremona was responsible for the entirety of the litigation team's eviction work. (*Id*. at 6:22, 28:6–29:7.) One paralegal was primarily assigned to eviction matters as well. (*Id*. at 52:7; Lenss Decl. at 2 ¶ 7.)

The firm had a step-by-step procedure for the assigned attorney and paralegal to follow when working on an eviction matter, and template forms to use to streamline the work. (Peterson Decl. Ex. A at 7:23–14:22; Cremona Decl. Ex. 1.) The procedure included various screening searches that the paralegal would perform initially after opening an eviction file. (Cremona Decl. Ex. 1 at 1 ¶ 3.) Within two days of receiving a request, the paralegal would draft an eviction complaint, based on the template. (*Id*. at 1 ¶ 4) The paralegal was directed to mark the lease for filing as an exhibit to the complaint. (*Id*.) The attorney then reviewed the complaint, provided any necessary revisions, and signed it, and upon receipt of the signed complaint, the paralegal attached the lease and filed it. (*Id*. at 1–

2 ¶¶ 5–7.) Typically, the process took approximately one hour of paralegal work and 30 minutes of attorney review. (Peterson Decl. Ex. A at 14:24–15:7.)

Jellum Law has a specific template for actions initiated on behalf of Invitation Homes. (*Id*. at 56:16–18.) The firm has specific templates created for eviction actions brought on behalf of other landlord clients as well. (*Id*. at 56:18–21.)

From the beginning of 2019 to the end of 2023, Jellum Law represented landlords in 349 non-expunged eviction proceedings for non-payment of rent in Minnesota state district courts. (Peterson Decl. Ex. B.) There were many fewer proceedings from March of 2020 through early 2022 due to the COVID-19 pandemic and related eviction moratoriums. (*Id*.; Peterson Decl. Ex. A at 61:9–21.) Apart from the pandemic years, the firm typically represented landlord clients in approximately 100 eviction actions per year. (Peterson Decl. Ex. A at 96:9–23.)

To the best of Ms. Cremona's knowledge, Jellum Law has never conducted a formal audit to ensure its employees' compliance with its written procedures for eviction matters. (*Id*. at 87:18–88:5.) Jellum Law's litigation group has regular meetings, at least once a week, in which the attorneys discuss any need to revise or review documents or procedures, monthly meetings at which policies and procedures may be addressed, and annual reviews during which the firm invites feedback from its employees on its templates and forms. (*Id*. at 83:17–85:9.) The firm does not have any records of these meetings, and no one attending the meetings is expected to take notes or minutes. (*Id*. at 86:18–87:17.)

Ms. Cremona agreed in her deposition testimony that, in approximately 30 eviction actions filed on behalf of Invitation Homes, including the one against Mr. Kowouto, Jellum

Law filed a complaint seeking all attorneys' fees incurred, despite an underlying lease capping fees and costs at $500. (*Id.* at 88:10–20.)

### B.   Procedural Posture

On September 9, 2022, Mr. Kowouto filed this putative class action against Jellum Law in state court, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Notice of Removal Ex. A ("Compl.") [Doc. No. 1].) Specifically, Mr. Kowouto alleges that "the averment [in the Eviction Complaint] that landlord was entitled to 'all attorneys' fees incurred' was false, misleading, and sought an amount allowed by neither law or contract," and thereby violated 15 U.S.C. §§ 1692e(2)(A), 1692e(10), and 1692f(1). (Compl. ¶ 28.)

Jellum Law removed the action to this Court and filed a motion to dismiss for failure to state a claim. On May 12, 2023, this Court, the Honorable Wilhelmina M. Wright,[1] denied Jellum Law's motion. (Order on Motion to Dismiss [Doc. No. 21].) In its Order, the Court held that the FDCPA applies to eviction actions like the one underlying the Complaint as a matter of law, and that factual issues precluded dismissal. (*Id.*)

The litigation proceeded, and Jellum Law now moves for summary judgment [Doc. No. 49]. It argues that it is entitled to summary judgment on four grounds: (1) that Jellum Law is not a "debt collector" within the meaning of the FDCPA and thus cannot be held liable under the statute; (2) that the FDCPA does not impose liability for a "good faith prayer for relief" pled in a complaint; (3) that a competent, non-specialist attorney would

---

[1]   The case was reassigned to the undersigned on December 13, 2023, due to Judge Wright's retirement [Doc. No. 47].

not have been deceived by the error alleged in this case; and (4) that Jellum Law has proven that the error in this case was bona fide, and accordingly is shielded from liability under the FDCPA.

## II.    DISCUSSION

### A.    Legal Standards

"Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021); *see* Fed. R. Civ. P. 56.  When considering a motion for summary judgment, the Court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. *Avenoso*, 19 F.4th at 1024 (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008)). "Although the district court must determine whether there is a genuine issue as to any material fact, this is a legal determination." *Id*. "Where the record taken as a whole could lead a rational trier of fact to find for the nonmoving party, there is a genuine issue for trial" and summary judgment must be denied. *Walsh v. Alpha & Omega USA, Inc.*, 39 F.4th 1078, 1082 (8th Cir. 2022). The Court views the evidence in the light most favorable to the nonmoving party, and gives the nonmoving party the benefit of all reasonable inferences. *Brands Int'l Corp. v. Reach Cos., LLC*, 103 F.4th 501, 504 (8th Cir. 2024).

### B.    Jellum Law's Status as a Debt Collector

Jellum Law first argues that Mr. Kowouto has failed to establish that the law firm is a "debt collector" subject to liability under the FDCPA. The Eighth Circuit has explained

that if the defendant "is not a debt collector for purposes of the FDCPA, the statute does not apply," and an award of summary judgment to the defendant is appropriate. *Volden v. Innovative Fin. Sys., Inc.*, 440 F.3d 947, 950 (8th Cir. 2006). A person or entity "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," is a debt collector under the statute. 15 U.S.C. § 1692a(6).

### 1.    The Law

Neither the Supreme Court, nor the Eighth Circuit, has specifically addressed the circumstances under which a lawyer or law firm meets the definition of "debt collector" under the FDCPA. *See Crandall v. Miller & Stevens, P.A.*, No. 20-cv-1793 (ECT/LIB), 2021 WL 4595535, at *4 (D. Minn. Oct. 6, 2021). There is a consensus, however, among courts who have addressed the issue that the Second Circuit's analysis in *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56 (2d Cir. 2004), is persuasive. *See Crandall*, 2021 WL 4595535, at *4 (describing the broad reliance on *Goldstein* in every circuit to have addressed the issue).

In *Goldstein*, the district court granted summary judgment to a defendant law firm after finding that debt collection activities accounted for only a small proportion of the law firm's business. The Second Circuit, vacating the decision of the district court, held that the focus of the FDCPA analysis should be on the regularity of the firm's debt collection activity, not whether debt collection comprises a firm's principal source of business. In evaluating the issue, the court identified five illustrative, non-dispositive factors for a court to consider:

(1) The absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s);

(2) The frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable;

(3) Whether the entity has personnel specifically assigned to work on debt collection activity;

(4) Whether the entity has systems or contractors in place to facilitate such activity; and

(5) Whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

*Goldstein*, 374 F.3d at 62–63. The court further explained:

Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity (debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not). Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

*Id*. at 63.

## 2.    Application of the *Goldstein* Factors

As to factor (1), the number of collection-related litigation matters pursued—*i.e.*, eviction actions—supports a finding that collection-related litigation is a regular area of practice for the law firm.[2] Public records collected by Mr. Kowouto reflect hundreds of

---

[2]     To the extent Jellum Law argues again that an eviction action is not debt collection activity engaged in by the firm, its argument is foreclosed by this Court's prior ruling that an eviction action under Minnesota law is debt collection activity for purposes of the FDCPA. (Order on Motion to Dismiss at 4.) Jellum Law has not presented any good reason

eviction actions commenced by Jellum Law over a five-year period, despite a pause in the firm's eviction practice during the height of the intervening COVID-19 pandemic. Of those actions, 240 were filed between the start of the class period (October 21, 2021) and the end of 2023. *See Goldstein*, 374 F.3d at 63 (finding that 145 collection notices sent over the course of a year was evidence of regularity). Ms. Cremona also acknowledged that Jellum Law engages in other types of debt collection activity in addition to pursuing eviction actions. (Peterson Decl. Ex. A at 23:12–14, 31:15–33:25.)

Evidence in the record also suggests that this is a regular practice area for the firm. In 2019, the firm pursued 89 eviction actions for non-payment of rent. In 2022 it pursued 98 such actions, and in 2023 it pursued 141 such actions. (Peterson Decl. Ex. B.) From January 1, 2020 through March 20, 2020, it pursued 18 eviction actions, a pace that would have resulted in 82 such actions over the course of the year, had there been no pandemic. (*Id.*) Ms. Cremona also testified that the firm typically handles approximately 100 eviction actions per year. (Peterson Decl. Ex. A. at 96:10–24.)

The record also shows that Ms. Cremona handled all of the eviction matters for the firm in 2022, and a paralegal was assigned to work on those matters with her. Further, the firm had a specific policy in place to facilitate the handling of eviction actions. This evidence supports a finding that the firm regularly engages in this practice area. *Compare Crandall*, 2021 WL 4595535, at *8 (a law firm's general litigation procedure, used across practice areas, is insufficient to support a finding that the firm regularly engages in debt

---

for the Court to revisit its prior rulings in this case, and it will not do so. *See In re Tri-State Financial, LLC*, 885 F.3d 528, 533 (8th Cir. 2018).

collection), *with Lord v. Senex Law, P.C.*, No. 7:20-cv-541, 2023 WL 3727003, at *7 (W.D. Va. May 30, 2023) (having a system designed specifically to facilitate eviction matters suggests that eviction is a regular practice area for a firm).

Finally, the record reflects that most of Jellum Law's eviction matters are undertaken on behalf of Invitation Homes. The firm's eviction policy and procedure names Invitation Homes as the presumed client, and identifies the employees of Invitation Homes who will likely serve as the primary contacts in any eviction litigation. (Cremona Decl. Ex. 1.) *See Goldstein*, 374 F.3d at 63 (where a majority of the notices sent appeared to be on behalf of a single client, the client's relationship with the firm was evidence of regularity).

Jellum Law responds that no reasonable trier of fact could find that eviction actions are one of its regular practice areas, because there is no evidence as to what percentage of its overall practice is made up of eviction matters. It argues that, without comparators, the raw number of debt collection matters litigated is meaningless. However, in *Goldstein*, the Second Circuit emphasized the distinction between "regularity" and "principal purpose." *Id*. at 61. The Fifth Circuit has similarly addressed this issue:

> Clearly, Congress must have intended the 'principal purpose' prong of § 1692a(6) to differ from the 'regularly' prong. *See Jarecki v. Searle & Co.,* 367 U.S. 303, 307–08, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961) (noting that we may not adopt a forced reading of a statute that renders one part a mere redundancy). Thus, a person may regularly render debt collection services, even if these services are not a principal purpose of his business. Indeed, if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity; the person still renders them 'regularly.'

*Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997) (finding a rational factfinder could conclude that a lawyer whose collection work encompassed over 600 demand letters, but represented only 0.5 percent of his practice during the relevant nine-month period, regularly engaged in debt collection). The Court further notes that in this case, the firm's collection practice is apparently significant enough that all employees are trained on FDCPA compliance when they join the firm. (Peterson Decl. Ex. A at 92:12–21.)

Jellum Law's argument that it never advertises itself as a firm specializing in debt collection activity is similarly unavailing. Ms. Cremona testified that it advertises itself as a firm with expertise in financial institution law, and is able to handle situations that may arise when a loan goes south, including helping with collection matters. (*Id*. at 16:20–24.) There appears to be a genuine issue of material fact in dispute as to whether the firm holds itself out as having debt collection expertise.

In light of the evidence as a whole, the Court finds that genuine issues of material fact in dispute preclude a finding that Jellum Law is not a debt collector as a matter of law.

### C.    FDCPA Liability for Jellum Law's Prayer for Relief

Jellum Law next argues that the Eviction Complaint's demand for attorneys' fees was a good faith prayer for relief directed to a court, and as such is immune from FDCPA liability. A "communication" subject to the FDCPA, as defined by the statute, means "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The Eighth Circuit has held that whether such a prayer for relief violates the FDCPA must be determined on a case-by-case basis. *Smith v. Stewart, Zlimen & Jungers, Ltd.*, 990 F.3d 640, 644 (8th Cir. 2021).

13

In this case, the evidence shows a clear discrepancy between the prayer for relief in the Eviction Complaint, and the terms of the Lease. The Eviction Complaint falsely asserts entitlement to *all* attorneys' fees incurred through litigation over Mr. Kowouto's debt, allegedly "pursuant to the terms of the Lease," despite the undisputed fact that the terms of the Lease limit any award of attorneys' fees to $500.

The Eighth Circuit has previously affirmed a district court's grant of summary judgment to an FDCPA plaintiff, on the issue of whether a communication's misrepresentation as to a debt collector's entitlement to costs and fees violated the FDCPA. *Kojetin v. C U Recovery, Inc.*, 212 F.3d 1218 (8th Cir. 2000). In *Kojetin*, the communication at issue stated that the consumer was obligated to pay a collection agency's full fee—15% of the principal due—despite the underlying agreement between the consumer and the loan issuer permitting recovery only of the actual costs associated with collection. Because the communication misrepresented the terms of the agreement by charging a percentage-based fee rather than actual collection costs, the Eighth Circuit held that it violated the FDCPA. *Id*. at *1.

This Court has previously applied the reasoning in *Kojetin* to hold that a complaint demanding contingency-based attorneys' fees in a state court collection action, where the underlying contract only required the consumer to pay reasonable attorneys' fees and collection expenses actually incurred, violated the FDCPA. *Munoz v. Pipestone Financial, LLC*, 513 F. Supp. 2d 1076, 1083 (D. Minn. 2007) (Ericksen, J.) (granting partial summary judgment to the plaintiff).

14

In this case, like in *Kojetin* and *Munoz*, the communication at issue falsely misrepresented the amount of debt owed. Jellum Law does not dispute that the Eviction Complaint misrepresented the terms of the Lease, and does not assert any legal basis for its demand for attorneys' fees other than the Lease itself. The Court finds that a reasonable trier of fact could find that such a misrepresentation is false, deceptive, or misleading, in violation of § 1692e, and could likewise find the misrepresentation to be evidence of an unfair or unconscionable means to collect a debt in violation of § 1692f.

Jellum Law, in response, cites to three Eighth Circuit decisions holding that a law firm debt collector does not violate the FDCPA by merely articulating a good faith legal position in a representation to a court. *See Smith*, 990 F.3d at 646; *Haney v. Portfolio Recovery Assocs.*, 895 F.3d 974, 989 (8th Cir. 2016); *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2012). The Court finds these cases inapposite to the facts before it. In each of the cases cited by Jellum Law, the Eighth Circuit considered FDCPA claims premised on collection actions that were ultimately not meritorious due to either: (1) a lack of sufficient, credible evidence, or; (2) a non-prevailing legal argument. There was no genuine issue of material fact, in any of the three cases, as to whether the law firms pursued the collection actions in good faith.

Moreover, in each case, the court emphasized that whether a law firm violates the FDCPA, through a communication in a legal filing, depends on the specific circumstances of the communication at issue. For example, "a claim that the defendant debt collector lawyer routinely files collection complaints containing intentionally false assertions of the amount owed, serves the complaints on unrepresented consumers, and then dismisses any

15

complaint that is not defaulted," would likely establish a violation of the FDCPA. *Smith*, 990 F.3d at 646.

Here, the demand for attorneys' fees in the Eviction Complaint was false, not because it lacked sufficient evidentiary support or misinterpreted some aspect of the law, but because it misrepresented an express term in the underlying Lease in a manner that overstated Mr. Kowouto's potential liability. And the record contains evidence that such a false misrepresentation may have been made in 30 other such eviction actions. This situation is closer to the hypothetical described in *Smith*, and the circumstances considered in *Kojetin* and *Munoz*, than to the benign conduct before the courts in *Smith*, *Hemmingsen*, and *Haney*. The Court finds that the discrepancy in this case raises a genuine issue of material fact as to whether the demand for attorneys' fees in the Eviction Complaint was made in good faith, and accordingly denies summary judgment on this basis.

Jellum Law next argues that, even if the prayer for relief falsely misrepresented the extent of any attorneys' fees to which it was entitled, there is no genuine issue of material fact in dispute as to whether a competent, non-specialist attorney would have been deceived by that demand. Mr. Kowouto responds that Jellum Law fails to correctly frame the issue under the law. Rather, he argues, the proper standard is whether an objective, unsophisticated consumer would have been deceived by the misleading demand.

The Eighth Circuit assesses FDCPA claims "objectively through the eyes of an unsophisticated consumer." *Powers v. Credit Management Servs, Inc.*, 776 F.3d 567, 574 (8th Cir. 2015). This standard applies to claims challenging communications made directly to consumers, including collection complaints served on consumers not yet represented by

counsel, because such complaints "can have the same ability to mislead and confuse as prelitigation collection letters." *Id*. at 573–74. The standard applies to communications made to any consumer regardless of their actual sophistication or circumstances. *See Coyne v. Midland Funding LLC*, 895 F.3d 1035, 1037 (8th Cir. 2018) (applying the unsophisticated consumer standard to a consumer who is also a licensed attorney).

On the other hand, "where an attorney is interposed as an intermediary between a debt collector and a consumer," the Eighth Circuit presumes the attorney will protect the consumer from fraudulent or harassing behavior. *Powers*, 776 F.3d at 574. Accordingly, when false or misleading communications are made to a represented party, they will only violate the FDCPA if they would be likely to deceive a competent, non-specialist lawyer. *Id*.

In this case, it is undisputed that Mr. Kowouto was not represented when he was personally served the Eviction Complaint, although he was represented shortly thereafter. Regardless, the Court finds that it need not determine which standard applies, because the record contains ample evidence to find that both an unsophisticated consumer and a competent, non-specialist attorney could be misled by the false misrepresentation made in the Eviction Complaint. *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 695 (8th Cir. 2017) (declining to determine the applicable standard after finding it reasonable to infer that a competent, non-specialist attorney could have been deceived by a false threat of litigation); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007) (observing that while a lawyer is less likely to be deceived or misled than an

unsophisticated consumer, a false claim as to the amount of debt a consumer owes "may be as difficult for a lawyer to see through as a consumer").

Jellum Law's demand for attorneys' fees in the Eviction Complaint was false—it stated affirmatively that, under the terms of the Lease, Mr. Kowouto would be liable for all attorneys' fees incurred in litigation over the debt alleged, when in fact the Lease limited his liability for costs and fees to $500. A reasonable trier of fact could find that a competent, non-specialist attorney could be misled by such a false statement in a court filing. Here, the record makes clear that Mr. Peterson—who Jellum Law agrees competently represented Mr. Kowouto—was in fact confused by the discrepancy between the Eviction Complaint and the Lease, and had to seek clarification from Ms. Cremona twice before the parties entered settlement negotiations. (Cremona Decl. Ex. 4.)

Jellum Law finally argues that, regardless of the standard applied, the false communication was not material. Under Eighth Circuit precedent, a false statement that would not contribute to a consumer's decision-making regarding the debt is considered immaterial and is accordingly not actionable under the FDCPA. *See Hill v. Accounts Receivable Servs., LLC*, 888 F.3d 343, 346 (8th Cir. 2018). However, the Eighth Circuit has held that, as a matter of law, a misrepresentation as to the amount of a debt, or an attempt to collect a debt not owed, is a material violation of both §§ 1692e and 1692f. *Coyne*, 895 F.3d at 1038.

Here, the Eviction Complaint, by misrepresenting the consumer's potential exposure to unlimited attorneys' fees, was a material misrepresentation of the amount of the debt owed. *See Kalebaugh v. Berman & Rabin, P.A.*, 43 F. Supp. 3d 1215, 1226

(D. Kan. 2014) (citing cases and holding that letters falsely stating that a consumer may owe attorneys' fees misrepresented the amount of debt owed); *Coyne*, 895 F.3d at 1038. Because a reasonable trier of fact could find that Jellum Law's false misrepresentation in the Eviction Complaint was material and could deceive either an unsophisticated consumer or a competent, non-specialist attorney, there is a genuine issue of disputed material fact that precludes summary judgment.

### D.   Jellum Law's Bona Fide Error Defense

Finally, Jellum Law asserts an affirmative bona fide error defense under the FDCPA, and argues that it has proven that defense as a matter of law.

The FDCPA provides that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

> To establish the bona fide error defense, a debt collector must prove by a preponderance of the evidence that its FDCPA violation was unintentional and was caused by an objectively bona fide error (i.e., one that is plausible and reasonable) made despite the use of procedures reasonably adapted to prevent that specific error.

*Wilhelm v. Credico, Inc.*, 519 F.3d 416, 420 (8th Cir. 2008). As several courts, including this one, have recognized, "the exception is a narrow one." *Micks v. Grustel Law Firm, P.C.*, 365 F. Supp. 3d 961, 975 (D. Minn. 2019) (Tostrud, J.) (citing cases). To prevail on a bona fide error defense, a defendant must come forward with evidence showing:

(1) Its FDCPA violations were not intentional;

19

(2) It made an error;

(3) The error was reasonable;

(4) It maintained procedures reasonably adapted to prevent the error; and

(5) The alleged FDCPA violations "resulted from" the identified error.

*Id*. "A failure as to any one of these elements is dispositive." *Id*.

In this case, Mr. Kowouto contests only the fourth element: whether Jellum Law maintained procedures reasonably adapted to prevent the error. Under this element, the Court must consider whether the debt collector maintained—i.e., actually employed or implemented—procedures to avoid errors, and whether the procedures were reasonably adapted to avoid the specific error at issue. *Wilhelm* 519 F.3d at 421; *see also Reichart v. National Credit Systems, Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008). The Eighth Circuit has stressed that the question of whether an FDCPA defendant employed procedures reasonably adapted to avoid the error that occurred "is a fact-intensive inquiry." *Wilhelm*, 519 F.3d at 421.

The Eleventh Circuit, citing to *Wilhelm*, reversed a lower court's grant of summary judgment on the issue of the debt collector's bona fide error defense, where the record did not reflect any internal procedures employed by the debt collector "to compare, even briefly," interest charges permitted by the consumer's contract with the creditor versus the interest placed on the consumer's ledger. *Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1276 (11th Cir. 2011). The *Owen* court found that the error in the case before it, a discrepancy between the consumer's contract with the creditor and the amount charged in the account statement, was readily discernable on the face of the documents available to the debt

20

collector. On that record, the court found that the debt collector had failed to prove, as a matter of law, that it employed procedures reasonably adapted to avoid the error that occurred. *Id*. at 1275–77.

Mr. Kowouto argues that the evidence in the record is devoid of any procedures initiated by Jellum Law that are specific to preventing the error that occurred. For instance, there is no evidence in the record of any procedure requiring Jellum Law attorneys to compare eviction complaints to the terms of the underlying lease, to regularly review template complaints for accuracy, or to communicate regularly with landlord clients about changes to their lease terms. Whether the more general policies and procedures to which Ms. Cremona did testify satisfy this affirmative defense is a fact issue to be determined by the jury.

The record is clear that this false misrepresentation was made in at least 30 eviction complaints, and that the discrepancy between Jellum Law's template complaint and Invitation Homes' standard lease terms was not discovered for at least three years. The Court finds that a reasonable trier of fact could find that Jellum Law did not maintain procedures reasonably adapted to prevent the error that occurred. Accordingly, this genuine issue of material fact in dispute precludes summary judgment.

**III.     ORDER**

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment [Doc. No. 49] filed by Defendant Jellum Law, P.A. is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 23, 2024                          /s/ Susan Richard Nelson
                                                                    SUSAN RICHARD NELSON
                                                                    United States District Judge